IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Janet Kleinser,

                Plaintiff,

      -vs-

Bay Park Community Hospital,

                Defendant.

Case No. 3:10 CV 2211

MEMORANDUM OPINION
AND ORDER

JUDGE JACK ZOUHARY

**INTRODUCTION**

Plaintiff Janet Kleinser brings suit under the Family and Medical Leave Act ("FMLA" or "the Act") and several state causes of action, alleging Defendant Bay Park Community Hospital ("Bay Park") interfered with and retaliated against Plaintiff for her use of intermittent FMLA leave.  The parties ask this Court to resolve a disputed legal issue "teed up" effectively through cross-motions for partial summary judgment (Doc. Nos. 17, 19).  Specifically, the parties ask whether Defendant interfered with Plaintiff's FMLA rights when it terminated Plaintiff's light-duty assignment and required Plaintiff to enter continuous FMLA leave during a period in which Plaintiff's injury prevented her from performing an essential function of her original position.

**FACTUAL BACKGROUND**

Kleinser worked for Bay Park from April 2004 through April 2009, primarily serving as a bedside nurse in the Medical/Surgical Department (Doc. No. 16 at ¶ 1–13).  In July 2008, Plaintiff suffered a work-related injury to her neck and right shoulder (Doc. No. 16 at ¶ 3).  Plaintiff's position

required, among other things, occasionally lifting up to fifty-pounds (Doc. No. 18-1 at 2–3). Following this injury, and continuing throughout the remainder of her employment with Defendant, Plaintiff's physician limited Plaintiff to occasional lifting of no more than twenty pounds (Doc. No. 16 at ¶ 4).

In July 2008, Plaintiff returned to work through the "Transitional Work Program" ("TWP") (Doc. No. 16 at ¶ 6). The TWP involves light-duty work and serves as an "interim step" in an employee's physical recovery from a work-related injury by temporarily assigning the recuperating employee to another position appropriate for one with the same work restrictions (Doc. No. 16-3 at 1). TWP participation continues only so long as the employee demonstrates sufficient progress, such that the employee could return to "full regular duty" or the position originally held. At its discretion, Defendant may extend a TWP assignment beyond the standard twelve-week limit up to an additional twelve weeks (Doc. No. 16-3 at 1).

In October 2008, Defendant approved Plaintiff's request for intermittent FMLA leave related to her July 2008 injury (Doc. No. 16 at ¶ 7). In November 2008, Defendant determined Plaintiff's progress toward recovery did not meet the TWP standard for continued light-duty assignment, and Plaintiff was removed from light duty over her objections (Doc. No. 20-7). There is no dispute that TWP light-duty assignments, appropriate for one with Plaintiff's work restrictions, were still available following the termination of Plaintiff's TWP participation (Doc. No. 16 at ¶ 14). Defendant then placed Plaintiff on continuous FMLA leave, because Plaintiff's lifting restrictions prevented her from performing an essential function of her original position; Plaintiff's continuous FMLA leave rights expired in January 2009 (Doc. No. 16 at ¶¶ 10–11). After learning her FMLA leave had been

consumed, Plaintiff again requested a light-duty position, and Defendant again refused to make such an assignment (Doc. No. 20 at ¶ 5).

Bay Park policy permits an additional fourteen weeks of unpaid leave following exhaustion of an employee's FMLA leave for an employee like Plaintiff who has been employed for less than ten years (Doc. No. 16-2 at 3).  During this additional leave period, if Defendant has filled the employee's former position with a new worker, Defendant pledges to make "every reasonable effort" to assist the employee in finding an alternative position once the employee is cleared from work restrictions (Doc. No. 20-5).  After Plaintiff's additional leave period of fourteen weeks lapsed in April 2009 -- which was in addition to the previous seventeen weeks of light-duty work -- she was still not freed from her work restrictions and Defendant terminated her employment (Doc. No. 16 at ¶¶ 12–13).

### SUMMARY JUDGMENT STANDARD

Summary judgment will issue when there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Federal Civil Rule 56(a).  When considering a motion for summary judgment, this Court must draw all inferences from the record in the light most favorable to the non-moving party.  *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  This Court is not permitted to weigh the evidence or determine the truth of any disputed matter, but rather determines only whether evidence exists that would allow a reasonable jury to return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  The issue raised here is particularly appropriate for disposition on summary judgment because the parties have stipulated as to all material facts.

**FMLA FRAMEWORK**

Claims rooted in the FMLA generally seek relief under two theories: interference and retaliation.  *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004).  Under an interference theory, a plaintiff must establish: (1) she is an eligible employee for purposes of the Act; (2) the defendant is an employer subject to the FMLA's requirements; (3) the employee was entitled to FMLA leave benefits by virtue of meeting certain criteria; (4) the employee provided adequate notice of her intent to invoke FMLA leave benefits; and (5) the defendant denied the employee FMLA benefits to which the employee was entitled.  *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).  A retaliation claim, by contrast, is marked by a plaintiff who engages in FMLA-protected activity with her employer's knowledge, and then suffers an adverse employment action that has a causal link to the employee's invocation of FMLA leave.  *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006).  Each theory, therefore, requires a demonstration that the defendant attempted to frustrate the FMLA-protected rights to unpaid leave or reinstatement.  *Arban v. West Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003).

**Plaintiff's Claims**

The only issue presently before this Court is Plaintiff's interference claim.  Plaintiff argues that by removing her from her light-duty assignment and requiring her to exercise continuous FMLA leave, Defendant interfered with Plaintiff's FMLA rights.  Defendant argues that because the Act is silent regarding both light duty and an employer's ability to place an employee on continuous FMLA leave, Defendant did not violate the Act by ending Plaintiff's light-duty assignment and requiring continuous FMLA leave.

4

Assuming Plaintiff is able to establish the other elements of her interference claim, Plaintiff's claim turns on two connected questions: may an employer force an employee to take continuous FMLA leave, and does the FMLA right of reinstatement extend to a temporary light-duty position that would have otherwise expired in the absence of FMLA leave?[1]

## PLAINTIFF'S FMLA INTERFERENCE CLAIM

Plaintiff makes four arguments in support of her FMLA interference claim:

- Requiring Plaintiff to expend her FMLA leave on a continuous rather than intermittent basis following termination of her light-duty assignment interfered with her "unfettered right" to elect intermittent FMLA leave;

- policies governing Defendant's light-duty program held Plaintiff to a higher standard than required for an employee to invoke her FMLA rights;

- her forced transition from an intermittent to a continuous leave schedule required Plaintiff to expend more FMLA leave than medically necessary, in violation of the FMLA;

- and the refusal to reappoint her to the light-duty position she held before entering continuous FMLA leave interfered with her FMLA-guaranteed right of reinstatement.

Each argument will be considered in turn.

### Involuntary Leave Theory

Plaintiff contends an employee's ability to elect FMLA leave on an intermittent basis is an "unfettered right" protected by the Act's proscription against employer interference in the exercise of FMLA leave.  In support, Plaintiff relies on *Dotson v. Pfizer, Inc.*, 558 F.3d 284 (4th Cir. 2009).

---

[1]

Plaintiff also alleges Defendant terminated Plaintiff's light-duty assignment in retaliation for Plaintiff's October 2008 request for intermittent FMLA leave, a request Defendant granted.  Whether Plaintiff can identify the exercise of an FMLA-protected right that led to her alleged retaliatory termination, as required by the governing test in *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 313–16 (6th Cir. 2001), is not before this Court because the briefing only addresses Plaintiff's interference claim.

In *Dotson*, the court contrasted the FMLA requirement for employees seeking intermittent leave to adopt or care for a newborn with those who seek intermittent leave to care for immediate family members or to recover from their own serious health condition.  While a soon-to-be parent may only invoke intermittent leave if the employer allows it, 29 U.S.C. § 2612(b)(1), an "unfettered right to take FMLA leave because of a serious health condition intermittently [exists] when '*medically necessary*,' with or without employer consent."  *Dotson*, 558 F.3d at 293 (emphasis added).

Plaintiff misinterprets the Act.  In the context of intermittent FMLA leave, "medically necessary" has a precise meaning.  The Act's implementing regulations require that an intermittent leave schedule "best accommodate" the medical needs of the ill or injured employee, or her immediate family member.  *Jadwin v. Cnty. of Kern*, 610 F. Supp. 2d 1129, 1169–70 (E.D. Ca. 2009) (denying summary judgment to plaintiff when the equivocal nature of plaintiff's medical certification could allow a fact finder to determine the intermittent leave schedule which defendant refused plaintiff did not best accommodate plaintiff's health condition).  The contours of an asserted entitlement to intermittent leave are necessarily determined by medical documentation from the employee's doctor identifying the impact an injury or illness has on the employee's ability to perform her job's functions.  29 C.F.R. § 825.202(b).

For example, if an employee who manages a chemical plant's control panel is advised by his doctor that the employee's chronic susceptibility to epileptic seizures leaves him unable to safely perform his duties, the employee is not entitled to reinstatement following expiration of FMLA leave.  *See Moss v. Formosa Plastics Corp.*, 99 F. Supp. 2d 737 (M.D. La. 2000).  But the same employer could also limit this employee to continuous FMLA leave because the employee's epilepsy would at all times render him incapable of performing the job's essential functions.  "The FMLA does not

6

require an employer to allow an employee to stay in a position that employee cannot perform." *Hatchett v. Philander Smith Coll.*, 251 F.3d 670, 677 (8th Cir. 2001).

The Sixth Circuit imposes limitations on an employer's ability to require an employee to take continuous FMLA leave, but these limitations do not apply here.  A claim arising under an involuntary leave theory is simply one form of an interference claim.  *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 449 (6th Cir. 2007).  A plaintiff who is forced to enter continuous FMLA leave will have an actionable claim *only if* (1) the employee, when placed on involuntary leave, did not have a serious health condition that precluded her from working, *and* (2) the employee unsuccessfully seeks FMLA leave that has already been expended during an earlier, wrongful forced leave.  *Id.*  A plaintiff must show the defendant's alleged interference prejudiced the plaintiff.  *Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, 594 F.3d 476, 484 (6th Cir. 2010).  The Act does not otherwise limit an employer's ability to require continuous FMLA leave.  *Sista v. CDC IXIS N. Am., Inc.*, 445 F.3d 161, 175 (2d Cir. 2006) (holding that, absent a demonstration of involuntary leave interfering with the exercise of FMLA benefits, the Act does not create a right to be free from involuntary unpaid leave); *Willis v. Coca Cola Enter., Inc.*, 445 F.3d 413, 417–18 (5th Cir. 2006) (permitting employer to require continuous leave so long as the employee's condition is a qualifying "serious health condition"); *Hicks v. LeRoy's Jewelers, Inc.*, 2000 U.S. App. LEXIS 17568,*12–13 (6th Cir. 2000) (stating that courts permit a covered employer to place an employee on involuntary FMLA leave so long as a "qualifying absence" renders the employee unable to return to work).

Plaintiff's claim turns on whether her ability to choose intermittent leave should be gauged according to the requirements of her original position as a bedside nurse or the light-duty assignment she held before Defendant transferred her from intermittent to continuous leave.

7

The FMLA's reach extends only to the guarantee of unpaid leave and reinstatement to the position the employee held when leave began, or to an equivalent position, subject to the qualifications previously discussed. *See* 29 U.S.C. §§ 2612(a), 2614. Plaintiff's assignment to, or removal from, a temporary light-duty position does not, therefore, trigger any FMLA-guaranteed right. Rather, Defendant's voluntary light-duty program more closely resembles the variety of reasonable accommodations the Americans with Disabilities Act ("ADA") may require. *See Heyne v. HGI-Lakeside*, 589 F. Supp. 2d 1119 (S.D. Iowa 2008) (granting defendant summary judgment on plaintiff's FMLA claim when plaintiff resigned not because of involuntary FMLA leave but as a result of defendant's failure to accommodate plaintiff's back pain); *Love v. City of Dallas*, 1997 WL 278126, *6 (N.D. Tex. 1997) (granting defendant summary judgment on plaintiff's FMLA claim based on an adverse employment decision actionable, if at all, under the ADA). The FMLA's leave guarantees are "wholly distinct" from protections afforded certain disabled workers under the ADA. *Hoge*, 384 F.3d at 249 (quoting *Navarro v. Pfizer Corp.*, 261 F.3d 90, 101 (1st Cir. 2001)) ("The ADA and the FMLA have divergent aims, operate in different ways, and offer disparate relief."); *see also* 29 C.F.R. § 825.702(a). Defendant's decision to remove Plaintiff from her light-duty assignment does not, therefore, violate the FMLA.

Further, Defendant's TWP policy clearly describes such positions as "temporary," and contrasts light-duty positions with the "full regular duty" position the program participant held before sustaining a physical injury or illness. TWP appointments are generally limited to twelve weeks duration, and continued participation is contingent on medical progress toward a return to "full regular duty" (Doc. No. 16-3 at 1). Any extension of an employee's TWP participation beyond three months, requires Defendant's consent. In Plaintiff's case, successful participation in the TWP program would

have resulted in a return to her position as a bedside nurse, Plaintiff's version of "full regular duty." But after seventeen weeks of light duty, Plaintiff's work restrictions persisted (Doc.  No. 16 at 6–8). Consequently, Defendant removed Plaintiff from her light-duty assignment in accordance with Defendant's generally applicable TWP program requirements (Doc. No. 16-3 at 1).

Because the FMLA's protections do not extend to Plaintiff's former light-duty assignment, and because Plaintiff's entitlement to intermittent leave is properly assessed according to her ability to perform the essential functions of a bedside nurse, Plaintiff's involuntary leave theory fails under *Wysong*.

### Stricter Standard Theory

Plaintiff next alleges that by removing her from light duty and requiring her to take continuous FMLA leave, Defendant held Plaintiff to a "stricter standard" than the Act requires.  According to Plaintiff, an employer may not condition continued light-duty assignments on the employer's assessment of an employee's medical recovery.

Plaintiff correctly notes that when an employer's internal policy for the exercise of FMLA leave is more demanding than the Act's minimum requirements, the Act controls.  *Cavin*, 346 F.3d at 723.  However, while the Act prohibits an employer from requiring an employee to select a light-duty position in lieu of FMLA leave, it does not address continued TWP participation.  29 C.F.R. § 825.220(d).  The Act establishes no minimum standards governing management of a light-duty program.  The collection of cases cited by Plaintiff in support of her argument concern only the measure of notice necessary for invocation of the Act's protections.  *E.g*., *Cavin*, 346 F.3d at 723; *Walton v. Ford Motor Co.*, 424 F.3d 481 (6th Cir. 2005) (affirming summary judgment for defendant where plaintiff's failure to provide sufficient notice of his FMLA leave resulted in termination).

Unlike an employer's management of a voluntary light-duty work program, the Act contains clear minimum notice requirements. *See* 29 C.F.R. § 825.302. Cases assessing the consistency of employer FMLA notice requirements with the Act's minimum standards are thus inapposite and do not advance Plaintiff's strict standard theory.

### Excessive Leave Theory

Plaintiff next asserts that Defendant required her to take more leave than medically necessary, relying on *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). This too fails. This Court first notes that the portion of the FMLA rule on which *Hoge* relied (i.e., "[a]n employee may not be required to take more leave than necessary to address the circumstances for which leave was taken," quoting 29 C.F.R. § 825.312(e)), has since been repealed. Like the statute, the November 2008 Final Rule that replaced the FMLA rule applied in *Hoge* omits any direct reference to excessive leave as an independent ground for an FMLA violation. *See* 73 Fed. Reg. 67934. Instead, the new rule explicitly prevents an employer from requiring more leave than medically necessary in the limited context of an employee's transfer to an alternative position under a reduced or intermittent leave schedule, 29 C.F.R. § 825.204, a provision neither relevant to this case nor relied on by *Hoge*.

But even assuming an employer requiring an employee to expend excessive leave remains a violation of the Act, Plaintiff's excessive leave theory cannot succeed. As discussed above, the FMLA does not require Defendant to continue Plaintiff in a light-duty position. Because Plaintiff concedes she could not perform an essential function of her job as a bedside nurse throughout her light-duty assignment and subsequent twenty-six-week leave period (Doc. No. 16 at ¶ 13), there can be no FMLA violation.

**Reinstatement Theory**

Plaintiff faces the same defect with her final theory.  Plaintiff argues Defendant violated the Act by refusing to restore Plaintiff to the position she held at the beginning of her FMLA leave when such leave expired in January 2009.  Plaintiff argues the language of the statute clearly requires her reappointment to a light-duty position.  According to the Act, an employee must be reappointed "to the position of employment held by the employee when leave commenced [or to] . . . an equivalent position."  29 U.S.C. § 2614(a)(1)(A)–(B).   Like the employee's ability to elect intermittent leave, the right of reinstatement is not absolute.  29 U.S.C. § 2614(a)(3)(B); *Arban*, 345 F.3d at 401; *see also Taylor v. Union Inst.*, 30 F. App'x 443, 452 (6th Cir. 2002) (affirming summary judgment for defendant on FMLA reinstatement claim where plaintiff would have been laid off even in the absence of medical leave).  Two important limitations foreclose Plaintiff's argument here.  First, an employee's right of reinstatement following exhaustion of FMLA leave cannot exceed the conditions of employment, if any, that would have existed if the employee had been continuously employed.  29 C.F.R. § 825.216(a).  Second, if an employee is unable to perform an essential function of the position she previously held, the employee is not entitled to her former position.  *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 512 (6th Cir. 2006); 29 C.F.R. § 825.216(c).

Together, these limitations prevent Plaintiff from establishing interference with her FMLA right of reinstatement.  Defendant terminated Plaintiff's light-duty assignment on November 4, 2008, which had the effect of returning Plaintiff to her position as a bedside nurse.  Plaintiff appeared to recognize as much, indicating on a November 3, 2008 "Request for Leave of Absence" form that she was then a member of the Medical/Surgical unit, the division to which Plaintiff was attached during

11

her time as a bedside nurse (Doc. No. 20-3).[2]    Beginning July 21, 2008, Plaintiff's light-duty assignment primarily placed her in the Dietary Department (Doc. No. 20-2).  Granting Plaintiff reappointment to a light-duty position without Defendant's consent would enlarge the employment rights Plaintiff would have enjoyed in the absence of FMLA leave.

Moreover, Plaintiff's lifting restriction continued up through her April 2009 termination, preventing Plaintiff from performing one of her position's essential functions.  Indeed, Plaintiff's disqualifying work restriction persisted into the summer of 2009, more than one year after she sustained her injury (Doc. No. 20-6 at 19).  Plaintiff could not perform an essential function of her position during the statutory leave period, and her right of reinstatement did not extend to her temporary light-duty position.

## CONCLUSION

Defendant afforded Plaintiff all the protections the FMLA extends to injured employees, and then some.  Defendant first allowed Plaintiff to participate in the light-duty program.  In the absence of such a program, Plaintiff would have been required to enter continuous FMLA leave immediately following the July 2008 injury that left her unable to perform an essential function of her position as a bedside nurse.  Instead, Defendant provided her more than four months of continued employment at her normal hourly wage.  Defendant then provided Plaintiff all her remaining FMLA leave. Because the FMLA does not require more, Defendant's decision to remove Plaintiff from her light-

---

[2]

Though Plaintiff used this form to ostensibly request Workers' Compensation leave, the parties have stipulated to November 4, 2008 as marking the start of Plaintiff's continuous FMLA leave.  Handwritten notations on the form identified the days Plaintiff previously used intermittent FMLA leave, as well as the date her remaining FMLA leave would expire -- namely, January 19,  2009.  Under Hospital leave policy, Workers' Compensation and FMLA leave run concurrently.  See Doc. No. 16-2.

duty position did not violate the Act.  Therefore, Defendant's Motion (Doc. No. 17) is granted,

Plaintiff's Motion (Doc. No. 19) is denied, and Plaintiff's FMLA interference claim is dismissed.

    IT IS SO ORDERED.

    s/ *Jack Zouhary*

JACK ZOUHARY
U. S. DISTRICT JUDGE

June 23, 2011
